This case is Guerrero-Sanchez v. Warden York Cty Prison How does keeping Guerrero-Sanchez detained without a bond hearing while he pursues these bona fide arguments for withholding only proceedings not effectively punish him while he is pursuing his legal remedies? The courts are clear that immigration detention is not punishment. It is civil in nature and the purposes are to ensure the alien is present for removal proceedings or removal if that is ordered and also to ensure that certain aliens who might be dangerous to the community are protected against them while they are present. The record reflects that Mr. Guerrero-Sanchez actually received a few post-order custody reviews in which DHS said we were keeping you detained for a number of reasons. You presented false documents at the border and snuck back into the country after your order was removed which shows you have no respect for the laws and we can't trust that you would be present for removal. And also you were convicted of an aggravated felony which makes us worry about the effect you'd have on the community if we were to let you out pending your completion of your withholding only proceedings. What happens if he has a withholding or removal proceeding but he doesn't prevail? Then he'd be removed back to Mexico. Despite his contention? Yes, but the withholding only proceeding is to vet that contention that he would be tortured or persecuted in Mexico and if he loses on that then there's no other claim he can raise. Do you have any idea when that's going to take place? I don't. I believe it's still in front of the immigration court although I'm sure his attorney might have some more exact information on that. Okay, thank you so much. Thank you. Good morning, may it please the court. Dan Conklin on behalf of Mr. Guerrero Sanchez. Now to start, regarding the custody reviews, the government doesn't challenge the finding that he's not a flight risk and that he's not dangerous and that has proved true since he's been out over the past year. He's reported about 11 times. He's requested permission to travel to take his daughter to college. So he's proven to be a good bail risk and so it's interesting because potentially the issue is the government attempting to bring back into custody somebody they are not challenging doesn't need to be in custody. But that's not really before us, is it? What's before us is a statutory issue. So regarding the statutory issue, we think it's 1226 because there's still proceedings that are taking place before Mr. Guerrero can enter the removal period. But doesn't it apply when the petition is pending, a petition for removal is pending? And I hear that there is nothing pending regarding removal, is there? What's pending is the application for withholding of removal and that has a heavy impact on the legal consequences that will flow from the removal order. So our position is that when somebody is seeking relief from removal, other issues involve the particular country, the when and how and where, the consequences of the removal order. Let me ask you a question right on that point. Sure. So as I understand the government's position, there are only two things that can happen based on the proceedings that your client is going through now, right? He's either going to be removed to Mexico or he's going to be removed somewhere else. Now is that wrong? I think it is wrong because I think it severely minimizes what actually is happening in this case. So what other possibility is there than the two that I've just outlined? That he remains in the United States as beneficiary of relief under the Convention Against Torture, which we're a party to. And I think somebody who receives that relief has a right to be here. Now there's two possibilities. I'm so sorry because I don't understand your response. I thought since this was a withholding only, that the only question was if there's a finding of veracity to his claims, his CAT claim, that it keeps him from being removed to Mexico. I didn't think that based on the papers that there was a third alternative, that he would essentially stay here and not be removed anywhere. Help me with that. If the government can find a third country, he can be removed to that country. But there might be proceedings to answer Judge Rendell's question before that can take place. There might be additional administrative proceedings. But either there is no other country, because no other country has been mentioned in over two years, or the government is not doing what 1231 says it should be doing. What's supposed to take place during the removal period is the identification of another country. So they're not actually doing anything that the removal period requires. You're saying that in practice, most people who get withholding of removal aren't removed to another country. A vast majority, based on my experience. What's the status then of their removal order? They've been granted withholding of removal, but presumably their removal order is still in effect, is it not? It hasn't been rescinded or anything else. The consequences, the contours of the removal order are still being defined in these proceedings. So the way I always view immigration proceedings is that there's a lot of things that can happen to a removal order. It can be vacated. It can be reopened. It can be withheld. It can be modified in different ways. And there's administrative proceedings that take place. Well, but a reinstated removal order, those things can't happen to it. It can't be reviewed. Well, certain things can happen to it. It can be withheld or it can be deferred. Those are additional things that can happen to the removal order. Well, you withhold removal, but do you withhold a removal order? Now, the order is still in effect. They just don't effectuate it, isn't that? Well, going back, and we can look back over 60 or 70 years of case law, what is a removal order? And going back to the 1960s, the Supreme Court said a removal order includes applications for relief. The statute doesn't specify for judicial review all these separate things are appealed differently. They just refer to removal orders. And the removal order encompasses all of these issues. Back at FODE, they said the removal order encompasses all of these applications, suspension of deportation, withholding of deportation. Those fall within the ambit of the removal order. But it's not before us, right, to redefine the finality of withholding only or reinstated removal order, right? I think I share the same understanding. A reinstated removal order, that's it, right? You can sort of work around the contours, but, you know, there's a finality to it. And I thought that was the whole sort of predicate upon which we are going forward in this argument. Either it is or it isn't. And I don't think it can be considered final because he's not entered the removal period. So the question is, are we in the removal period? We're not in the removal period because nothing in 1231 is happening. The government's not. Either they have cycled through countries and there's no other country, which means the absolute decision, the result of this withholding only proceeding, will be whether or not he remains in the United States. That takes us back to Section 1226. So if we are in 1226, I don't understand. Help me. If we are in 1226, why aren't we in 1226C and not 1226A? Well, I think the district court found that he's in 1226C because the court applied Chavez-Alvarez. And to go to that point, Jennings does not abrogate Chavez-Alvarez or this court's holdings in DEOP. It does not. Jennings did not address the constitutional avoidance part. Yes, it undermines that. But the constitutional question, which was raised in each of those habeas petitions, DEOP, Mr. Chavez-Alvarez, and in this case, remains good law. But the majority did not address the constitutional question. This court has. Let me back up. Isn't the answer to Judge Greenway's question that it has not been argued before any agency that 1226 applies? Has it? Well, the argument would be made, I guess, before the district court in the habeas proceedings. Well, in any event, has that argument been made? Well, the court in its decision, the district court found it was 1226. Yes, but what I'm saying is C. So the argument was made by Mr. Galera. I'm saying 1226C. Isn't that your question? Aren't we in 1226? We're not in 1226 because it's not been raised that that applies here, has it? Before the agency or the district court? It was 1226A, 1226A, 1226A. Well, the 1226A and 1226C, the Supreme Court has always read those together because 1226A begins with finding the removal period pending a decision, and 1226C flows from that. Okay. So that's more to my point. There has to be the finding the district court said 1226A. Then the government could have come in and said, okay, 1226A. But guess what? Now we're in C. So we'll have a further hearing as to whether it's still on. That argument's been waived. Okay. But it's been waived because it's – I agree with that because it could have raised that long before. It's either been waived or it's definitely not before us. It's not, and I don't think that would be a permissible reason to take him back into custody. And it would take further proceedings to say 1226C, and then they'd say, well, it's been waived. But that's not for us to consider. That's correct. So go back for a second. My impression is he's just waiting for a removal. He's waiting for his Mexico or some other country, and that's his current status. But you've added a convention against torture possibility. That's his claim. He has a claim for relief, and it's actually the exact same application as the asylum application. There's one that applies to these three forms of relief. It's the same form of relief that Mr. Diop was seeking, and he has an evidentiary hearing in September 2019, I believe, on that application. So there's still – and if he succeeds, he cannot be released. September 2019? Yes. A year and a half in prison. And to go to those backlogs – and I would say that's not his fault, and he shouldn't be required to sit in detention as he waits for the government to work through the backlog, particularly when he got to this stage because of the waiver. Actually, far away. What is his next step? What is his next step? His next step will be to go to immigration court with the attorney he has retained in Las Vegas, where he lives with his wife and his two daughters who are non-college yet, and go for an individual hearing before the immigration judge, which is the exact same form of relief. Individual hearing to address what? To address his application for protection under the convention against torture. So he's got collateral proceedings – I mean, he's got parallel proceedings going here. It's not because it's all – these are singular proceedings regarding the same order, the same relief. There's only one removal proceeding. These are not separate collateral. But different bites of the same apple, basically. Yes. If I go to immigration court tomorrow with somebody who overstayed their visa by a few months, and we go to our initial master, just down the road at the Philadelphia immigration court, I can walk into court and file my application for withholding of removal or cat relief convention against torture. And then my hearing will be scheduled for an individual hearing. And however far down the road, then I will go and I will testify about the facts. In this case, he's been actually finding that he probably would be killed, but the question is, you know, would the government be involved in any way? The immigration judge found him credible and found he probably would be tortured, but that's not the end of the inquiry. There's still other legal and factual issues that need to be decided. But if I go to the Philadelphia immigration court and I say, yes, this person overstayed their visa, and maybe I have a problem with asylum because there's no nexus or maybe they've been here over a year. So I say, we want to request cat relief. It will be scheduled for an individual. That person will be scheduled for an individual hearing. That's the exact same thing that's happening with Mr. Guerrero. I mean, practically speaking, how it looks to the eye, you know, to somebody just observing immigration court, it will be the exact same proceeding. And based on the government's argument, which I think could never hold water in real life, that person I just described who I go to immigration with would be in the removal period, even though there's never even been a hearing on their application for relief from removal. Would it really take a year and a half to schedule a cat hearing? It depends on the court, the jurisdiction. Different courts have different backlogs, and they've been increasing. And, you know, going to the backlogs in Jennings, the government conceded the statistics they gave into moral wrong. You'll notice that in the opinion that it does take much longer. And the backlogs have only increased, especially currently there's, you know, there's more people being placed in removal proceedings. It just depends. Right now there are backlogs, and to answer your question, it would depend on which immigration court. Are reinstated removals in a different category? Excuse me, Judge. I said, are reinstated removal orders in a different category? Or would it just get in line with everyone else? At the immigration court level, in terms of if you go, they're called master calendar hearing dockets. And those are like the preliminary hearings and then the individual hearings. And if you go to immigration court, there will be a list outside the court of all the cases for that day, maybe 50. If you're just looking at them, they're all on the same list. They're all in withholding removal. These aren't separate proceedings. The only difference is the scope of the proceeding is more limited. But other than that, they look exactly the same. Nothing can happen to him until the very least until he finishes his proceeding in September of 2019? Yeah, and the government has made that concession in other cases, that they can't remove somebody during the withholding proceedings. And to that point, regarding the third country, if there is one, you know, it would be great if they would let us know because I've had clients, you know, when you're sitting in custody who will say, well, where else could I go? They don't necessarily want to be in custody for three years. Actually, the first case I took in California prison, they need to. And there needs to be another country willing to accept. And that is very rare. And so they say, we will go to another country. We would rather go to Sweden or somewhere rather than sit in custody. But the problem is there isn't another country, which means what's at stake in the withholding proceeding is, for a practical purpose under 1226, will that person be removed? And we can't say that that's not the actual practical purpose. And the government can't detain somebody and say, oh, theoretically there's this third country. Because that's not in the record. We don't have that as a matter of record that, you know, withholding really has to do with whether you'll be removed rather than where. Theoretically it has to do with where. But for a practical purpose, it's the same question. Right. Well, so let me ask you this. In Zabidas, the alien was detained pursuant to 1231, and the government was trying to figure out what was the list of possible removal countries. So does that inform us at all that this isn't a question of whether the alien will be removed but merely where? I think Mr. Guerrero is entirely unlike Mr. Zabidas because, one, they said the government was cycling through countries. Well, here apparently the government is not cycling through countries. In Zabidas, they were actually trying to remove him. They were calling his country. They were trying to get travel documents. They wanted to remove him. Here, and Mr. Zabidas was not applying for any form of relief. And, again, we can't say that the convention in this country is not a form of relief. Here, he is applying. He is appearing before an immigration judge. He is going to court. He is applying for relief from removal. And the government is not trying to remove him. They're not similarly situated in any way. And then the government makes the argument of Zabidas that, well, we can't show he won't be removed to Mexico. Well, that's exactly what we're litigating. That's the whole purpose of these administrative proceedings. What's the case that you cited, been decided a long time ago, where you said that removal order includes applications for future relief? That, in a brief, that's FOTI, F-O-T-I, I think the I-N-S, and CHATA, the I-N-S, were just, and they're, you know, the Supreme Court has examined the phrase order of deportation or order of removal, and they've kind of said, well, what's included in this order? We need to know that when we review it. And they've said all of these, and it makes practical sense. All the applications for relief. And this court has also found, actually, that designation of a country is included within an order of removal. And that's very important because the agent can only seek review of the removal order. And even in the note to 1231, it says all issues raised on appeal should be included in an appeal of the removal order. And none of that can be determined until at least, at minimally, September of 2019. And at that stage, in September of 2019, in his proceeding here, he went from the immigration court to the BIA to this court, then back to the BIA, then back to the immigration court. Now, he's at the immigration court, so either he could win his case, and since he actually is very confident he would be killed, I think he could win his case, in which case I would agree once that administrative proceeding is over, I would agree his removal period begins. Once there's no more administrative proceedings. As long as the CAT claim is not still pending. Yeah, I'm saying once there's no longer any type of claim for relief, or there's not a stay in place. And in 1231, the conditions, you'll notice when the removal period begins, they all relate to when the government can actually go remove somebody. What's your position on whether there's an implicit bond requirement in 1231? Well, I think there is. And Jennings does not, Jennings reaffirmed that 1231 can be so construed. If we employed the doctrine of constitutional avoidance, found that there was a, pardon me, an implicit bond requirement, while it would be a different pathway than the district court, it would give your client the same relief that you ultimately seek, which is giving him the opportunity to stay out on bond because he's not a flight risk or a danger to the community, as was so found, until this is all resolved. I agree, Your Honor, that it would be the same end result. The relief we'd be seeking, if that were the case, would be the individualized bond hearing by an impartial arbiter addressing the issues of flight risk and dangerousness, which is exactly what happened. But in the meantime, if that were the determination, he'd be brought back in until that happens. He said 1231. Don't you think they'd come and detain him until there was that determination? I don't think they would because it's already been found that he's not a flight risk. I don't think they would be able to. They've also waived findings on those issues. So I don't think they would have to bring him back for a hearing to address issues they've already assessed and that he's not a flight risk or danger. He's even less. Right. Now you have the history. Yes, now we have the history. It sounds like a status quo until 2019. Until his withholding proceedings conclude. If he did lose at the Las Vegas Immigration Court, then he could appeal to the BIA again, and then he would also be able to seek judicial review in the Ninth Circuit. So it could still go on. The first case I took at York County Prison was a withholding case, and I had a master calendar hearing in Denver in August, and I took that case five years ago. And he was at York County Prison for about two and a half years before he was released because he was in no criminal history whatsoever. He wasn't a flight risk, and he, as well, like Mr. Guerrero, checks in. So it's very difficult. All I'm saying is to predict when a withholding case might end. Cindy asked me at York County Prison how long might this take place. I could say six months to four, five, six years. It's just we don't know. I have nothing else. It's undetermined. Thank you, Your Honor. Take a deep breath. Thank you. Yes. May it please the Court, Your Honor, just briefly in rebuttal, I would urge the Court not to find an implicit bond hearing requirement in Section 1231A. I understand that was the last hypothetical posed. The Supreme Court set the standard for impermissibly long detention under Section 1231. That's Zobby Waltz. The only circuit that I'm aware of that has imposed another bond hearing type requirement is the Ninth Circuit in the Duke case, and a lot of the reasoning that went into that case has really been called into question by Jennings because there's no mention in the text of a bond hearing requirement. Do you agree if we found that 1231 applied that it would have no practical impact here? I think that might depend on whether or not DHS would look to take Mr. Guerrero-Sanchez back into custody. As far as I know, that determination hasn't been made yet, but there's a possibility they might not. I know of other cases where the ruling went down our way and we didn't take people back into custody. But you might. They would have the prerogative to do so. I'd like to point out that there's no practicality inquiry in determining whether or not the removal period begins, and that's illustrated by the Zobby Doss case itself. One of the aliens in Zobby Doss, I think it was the alien who was going to be removed to Cameroon, there was no repatriation treaty in place for that country, but that didn't stop the removal period from starting and running and running through completion and still the Supreme Court saying we're still dealing with Section 1231 detention. Even though removal can't be affected, that doesn't change the statutory scheme or the detention authority under which the alien would be detained. Do we have facts before us to conclude that despite your argument that Zobby Doss is applicable, that this is a prolonged detention and a bond hearing is required as a result? You want me to rephrase it? So here's what I'm trying to determine. You say there's no implicit bond requirement under 1231, right? And you say all you have to do is look at Zobby Doss, right? And Zobby Doss says at some point, right, you're going to have to do something because it's a prolonged detention, it's what's the key words, there's a reasonable probability that the person will be removed. At least in this circumstance, an argument can be made that we're talking about a circumstance that's so far off that Zobby Doss is traversed. If that's so, then are you saying that that is independent of 1231, a basis for a bond hearing? No, I think that if the court finds that there has been a Zobby Doss violation, then the remedy is to order the alien is released under conditions of supervision. However, I think that if the court wants to go there, there should be a remand because the magistrate judge actually addressed the significant likelihood of removal in the reasonably foreseeable future, the Zobby Doss standard in the report of recommendations, but the district court never reached that because it found a different statute applied. So perhaps if that's the avenue you're looking at, there should be a remand for the district court to actually address the facts contributing to the Zobby Doss standard. Can we talk about removal if he has a pending convention against torture claim that's not going to be heard for about a year and a half? Well, so there's nothing in the statute that requires Department of Homeland Security to not start looking at other alternative countries. You can, but I mean, he has a pending convention against torture claim, apparently. Yes. And it's not going to be heard for quite a while. Can he be removed while that case is pending? There's nothing in the statute that prevents that. I think in the vast majority of cases, DHS tries to establish that the alien can still be removed to that country, and here I think there's good evidence to suggest that Mr. Guerrero-Sanchez can be removed to Mexico because he already was. But there's nothing in the statute that prevents DHS from starting to look at other countries, but at the same time they have a lot invested in this case, so I think they're going to see it out. I wouldn't doubt that you could start looking at him, but I was just wondering if he can actually be removed while he has a pending tagline. I don't believe they would seek to remove him, but I don't know of any statutes whereby to actually attempt him to do so. All right. Thanks so much. Thank you. Well-argued case. Kudos to counsel. And we will take the matter up.